coming and visiting Judge Terry Doty from North Louisiana, who's volunteered to help us out. We very much appreciate it. We have three cases on the docket. We do appreciate if you try to adhere to the time limits, the yellow light will come on until you have two minutes, and when the red light signals, we ask you to conclude your remarks unless you're entering a question from the court. We are familiar with the briefs and record excerpts. We have not necessarily read the entire record, and so we appreciate citations to the record when those are appropriate. So with that, we call the first case of the morning, number three, here from Mr. Johnson. Good morning, and may it please the Court. Before I begin, I'd just like to briefly note that Appellee's last-minute 28J letter regarding the Villareal case, which touches on the Mallet exception to the independent intermediary doctrine, does nothing to undermine that issue as it was thoroughly addressed in Appellant's brief, but I'd be happy to submit a responsive letter this afternoon or tomorrow if the Court would require. But this case involves Mr. Randall Hall, who was arrested for nothing more than a phone call with his wife. The arrest was entirely without merit, and it violated Mr. Hall's First, Fourth, and Fourteenth Amendment rights. That said, Appellant has three main points. First is that there is no probable cause to support the arrest, and the warrant provided is facially deficient under Mallet. At worst, anything that could have been construed as interference would necessarily have been speech only because Mr. Hall was 90 miles away at the time. Moreover, his wife's decision to not voluntarily provide the information that Mr. Trocase requested that night was entirely legal and within her rights. Second, even if the Court were to find that probable cause supported the arrest, it would still have violated Mr. Hall's First Amendment rights because it was the type of arrest that officers typically exercise their discretion not to make. But Trocase chose to make it anyway due to his animus toward Mr. Hall as a result of a phone call. And third, the city may still be liable for the constitutional violations under both Monell and the independent basis of ratification. So turning to that first point about the lack of probable cause, again, Mr. Hall was 90 miles away at the time, and his wife over the phone. So he could not have physically interfered directly in any way. That's not alleged. Appellees don't argue that. The district court didn't find that. So that's off the table entirely. How do you get around Voss versus Good with that argument? How do you get around the Voss case with that argument? So there's a couple of ways that we get around the Voss case. So, I mean, the Voss case is about kind of this general concept that appellees argue that the district court found of basically where words or verbal interference is transformed in some way into being equivalent to physical interference. And in the Voss case or in the Barnes case, what we see is we have these more controlling or more power-imbalanced relationships. In Voss and in Barnes, they both involved parent-child relationships. In one case, the mother and the child were being arrested. In the other case, the son was being taken into custody to be protected from the mother, but the mother directed the son into her car. So the primary difference is that there's no power imbalance in this situation. It's a spousal relationship. This is a relationship between two independent and autonomous results or, excuse me, adults. And the wife is not assumed to be submissive to the husband. The husband is not assumed to take responsibility for the independent actions of his wife, even if they came to that decision collectively or she made the decision on his advice. So in the other cases where there's speech-only interference that can be construed as physical action in a way that's arrestable, the courts look for words that have the effect of force or presents a clear and present danger. And none of that is even remotely present here. Let me just ask one question. On the speech-only exception, my understanding was Voss said that, you know, because that if it just had been an argument with a police officer that had been speech-only, but the fact that the mother instructed the child to run away and to resist and those type things, it wasn't speech-only. So I guess I don't see the difference, because even though he's 90 miles away, I mean, Voss didn't seem to say you got to be there for it to be non-speech-only. So how is that different? Right. So, I mean, I think one thing, Your Honor, is, so first of all, I mean, like you said, mere arguing with the officer is not itself interference. And I think when you, you know, look at the conversation that happened between Mr. Hall and the officer, I mean, they were just arguing about whether or not the information should be provided. And you're asking about the difference. And again, I think I would point to, first of all, that the nature of the relationship, there's no, you know, it's not mother-child, it's between two independent, autonomous adults. So there's no power imbalance in their relationship. And the second thing is the physical action that's contemplated. So in Voss, we're talking about somebody resisting or running away from or fleeing, being taken into physical custody. And in this case, we're talking about, you know, taking an idea out of your pocket and handing it to somebody. I mean, that's, it's two entirely different things. And the important thing is not the physical action of handing an item to somebody. The important thing is the information that's being provided from one. Well, are you talking about the specific information that was required? Obviously, power imbalance doesn't explain it all. Because suppose this were, these were two drug dealers and the cop is asking one of them questions and he's talking to the other one on the phone and says, you know, don't answer him, you know what'll happen if you do. Well, so I think there's kind of two ways to approach it. Is that disrupting or impeding the investigation in the language of the statute? So I, I think it, it could be and it couldn't be, and it depends on, it depends on further facts as with any hypothetical. So I think if that hypothetical, in that hypothetical, if you're talking about a drug dealer, you know, these are often, you know, pyramids. So if it's somebody higher up on the pyramid instructing an underling where there is that sort of power relationship where, where there's somebody expected to follow and somebody expected to lead or make decisions, then you could say that that could be interference. But I think if it's, if it's, you know, just kind of two people, it's not some enterprise, it's just two friends at a high school selling to their other friends, then I don't think, I think somebody saying, hey, you know, you don't need to talk to the police is not itself interference. The statute doesn't talk about power relationships or anything. It just says anyone who disrupts, impedes, interferes with the, with the officer in his duties. That's, that's true. And that actually brings... And obviously if he was just cussing out the cops, that's not, that's not a crime. But this goes directly to what the officer was trying to investigate. It's true that that's exactly what the officer was trying to investigate. But I do think that we, we should look at the statute not just in terms of what Randall did, but what his wife Rachel did. Because what Rachel did, or in this case didn't do, what I don't think could be considered interference. And the officer did not seek to arrest her for interference. Her decision to change her mind and go from, hey, I'm going to go grab my ID and give it to you, to actually I really don't feel safe with that, I've been stalked in the past, I have these other issues, where I don't feel comfortable doing this right now. I'll give you this information in a different setting, but not right now. That, that decision was legal. She was able to make that decision. There's nothing wrong with that decision. So I think that just because it became, it, it came from or was supported by the advice of her husband doesn't mean that her husband is then guilty of interference if what she did was itself not interference or if it was itself not illegal. And in addition, the officer already had the information. He showed up at her address because he found her driver's license information and her vehicle information. He said that in the Warren affidavit. So the, the provision of information to him, whatever the relation was to his investigation, if it was that important to his investigation, if he was going to go turn around and then seek a warrant, he could have done so for that information and gotten that information to, to complete his investigation if he truly needed it that badly. But instead he chose to not do anything with that investigation, abscond that entirely and arrest Mr. Hall instead. He had to, he had to get, I mean, well, let me just ask you this, I want to make sure I understand. I know what you're, you know, what you're claiming and saying, but the, I want to make sure you're, you know, I know there's a, under Franks v. Delaware, that's the part of the doctrine that says that you don't have a, that if there's a, you make false claims to the, to the justice of the peace and all that. You're not saying he made any false, it seems like y'all's facts lined up. Are you saying he said anything, the police officer said anything to the justice of the peace in getting the warrant that was wrong or? No, we're not saying anything was false. We're not going to accept that the officer's version of events in that warrant affidavit was entirely accurate, but we're also not saying that there was anything false or intended to mislead the magistrate. What we're saying is that the, what he presented, even if it was 100% entirely accurate, was facially deficient because all it made out was a speech-only interference claim, and that cannot support an arrest under Texas law. That's understood in this circuit. And I'm sorry to ask many questions. I read a lot of, you know, Liz, and it's an interesting case. I've got to say that, but the, but what I wonder is you're saying speech only, but speech only is a defense. So are you saying that if there's a defense, like for example, somebody's charged with murder, they might be saying as a defense that this was self-defense. Are you saying that a defense means you don't have probable cause? I mean, isn't a defense like you go to court and try to say whether you've got a defense or not? What I'm saying is just because the, having the speech-only defense doesn't mean, you're saying it mitigates probable cause totally? Don't you have to go to court and kind of show your defense, improve your defense? So I've got two responses to that, Your Honor. The first is that, I mean, the existence of a defense is not, you know, a per se bar to probable cause. Like just saying, oh yeah, I have this defense, doesn't mean that probable cause didn't exist in the first place. I think if an officer has all of the facts that, you know, if something played out in front of him and he witnessed what is obviously an undoubtedly a defense, I think you could then make the claim that probable cause didn't exist in the first place. But that's not what we have here. What we have here is the case where it's listed in the statute as an affirmative defense. But what case law in Texas, state courts, and in this court, multiple times unequivocally say, is that not only is this a defense, but if this is the case, there is no probable cause to begin with. So this is a special case where, yes, it's labeled as a defense, but the fact that it's labeled as a defense doesn't mean that, you know, you can just say, well, there was potentially interference, so we might have had probable cause. There are false arrest claims for speech-only interference. But pivoting from that, even if there was probable cause, that doesn't completely rule out the existence of the First Amendment claim in issue here. So the officer had Rachel's driver's license information, vehicle information already. Again, he said that in the warrant affidavit. If he needed more information, again, he could have gotten a warrant for that information. But instead, he didn't like the fact that he had to do something other than just get the information from her that night. Or he didn't like something about the phone call. Something. But there was something about whatever happened in that conversation that the officer didn't like, and he chose to, even though officers typically do not arrest for phone calls only or in any kind of situation like this. Because the thing that's really interesting is that none of the cases that we've cited, none of the cases that appellees have cited, none of the cases that the district court cited, support this kind of arrest. None of those cases show a phone call that happened and say, what happened on this phone call between the officer and the person, or the person and their friend, their wife, their client, their whoever, is an arrestable offense. So between that and the fact that this, again, is the type of claim that courts unanimously have said, if it's speech only, we don't arrest for that. That's not something that we support. This is the exact type of claim, the exact type of fact where an officer would typically exercise their discretion not to make the arrest. So with that in mind, because, you know, all we have is... So this was so blatantly unconstitutional or illegal, that even though the magistrate judge was willing to issue a warrant, the police officer should have known better? Correct. So the... Well, isn't that the argument that did not prevail in the V. R. L. en banc? That's true, but in that en banc case, basically what that was about was there was a citizen reporter that had published some non-public information. And there was basically a statute that says you can't publish... I understand that, and V. R. L. is enhanced by the fact that the state trial court dismissed the charges and said the statute was unconstitutional. Right. But even though that wasn't applied, but that's not my point. I thought we were talking about Franks. Maybe you moved on to First Amendment retaliation or something. Yes, I did move on to First Amendment retaliation, but with regard to Malley, the standard has to do with whether a reasonable officer would seek the warrant in the first place, and whether or not the warrant itself is facially sufficient. So therefore, so you're saying the intermediary defense doesn't apply if you go back beyond... So the officer shouldn't have even bothered... So the officer acted illegally by even going to a disinterested magistrate? That's crazy. So the exception in Malley, the way that the Supreme Court in Malley describes the exception is not that the officer was wrong to rely on the issuance of the warrant, or that the officer can be liable for the magistrate being incompetent enough to issue a warrant on facts that don't support probable cause, but where the officer's liability comes from is for putting together a warrant and seeking a warrant that in the first place any reasonable officer would know does not support probable cause. That's what the Malley exception is. That's the heart of the Malley exception, where if a warrant is facially deficient, no reasonable officer would think that there's probable cause here. They would not seek that warrant in the first instance. Okay, that's your argument, and you have an opportunity for rebuttal. Thank you, Your Honor. All right. Mr. Helfand. Good morning, and may it please the Court, Bill Helfand for Travis Trocosa and League City. How do you pronounce his name? I don't know that I pronounce it correctly, Your Honor, but I pronounce it Trocosa. Okay. I think it's worth, if I may, predicate my remarks by pointing out that all of these things that the Court has already been discussing with Appellant's counsel, and I know the Court knows this, but I'm a little bit concerned about Appellant's counsel's presentation, seems to deviate from the basic law of immunity. That is, this Court has said, consistent with and must be disproven. And so, respectfully, I take issue with my friend's suggestion that the question is whether a reasonable officer would seek a warrant. No. Under this Court's well-settled precedent, the question is, has the plaintiff demonstrated no reasonable officer could have believed it appropriate to seek a warrant? And in that regard, the District Court's opinion is very helpful. The District Judge observed that without regard to the question of the independent intermediary, at Record 159, Judge Brown explained that Mr. Hall does not dispute the elements of the crime for which he was charged. He actually admits them. Instead, what he posits is that probable cause is the fact that Mr. Hall's was vitiated by an affirmative defense, as Judge Doty pointed out. Now, that's his briefing. His counsel has said, and I appreciate that because he's correct, that consistent with this Court's opinion in Loftin v. Prentice in 2022, which is cited in my brief at page 21, this Court made clear that the Fifth Circuit has never held that the defendant vitiates probable cause. So respectfully, I also am concerned about my opposing counsel's representation. First, he said, quote, multiple cases in this Court have held that an affirmative defense precludes probable cause. And then he said it was unanimous. Yet I don't find any briefing from the appellant that actually supports that position, and that position is obviously disproven by this Court's opinion in Loftin v. Prentice. Now, if it will turn out, as a general proposition or specifically as to this case, that the affirmative defense of speech could vitiate probable cause, clearly that's a decision that this Court is free to make, but that would not preclude the qualified immunity, excuse me, upon which Judge Brown dismissed Officer Trokoset, because we all know that if the law develops here and now, that retro, it does not apply retroactively. And at the time, Loftin v. Prentice was the clearly established law to the extent that the opinion of any one circuit can establish law. Loftin v. Prentice was the clearly established law in this circuit. Now, the other thing that appellant's counsel said is simply incorrect. Not only are there not multiple cases, in fact, in 2023, the Tyler Court of Appeals in Whiting v. State of Texas, which is cited at page 20 of the appellee's brief, said, quote, the speech-only provision of this statute is neither an element of the offense nor an exception thereto. And, of course, the question of probable cause turns on whether the elements of the offense are reasonably satisfied. So, under the clearly established law, not even an affirmative defense based solely, I'm sorry, under the clearly established law, Loftin v. Prentice, immunity applies, even if this Court now finds that that vitiates probable cause prospectively. But, in fact, and as some of the Court's questions demonstrate, the clearly established law on this statute is that this type of conduct, as Judge Brown observed in his opinion, is not speech-only because what it did, just like, as I think Judge Douglas' question prompted, it caused an individual to disregard an officer's efforts to investigate a potential crime by instructing that person not to participate. And I would submit that Voss v. Goode decided in 2020, and therefore the clearly established law at the time of this incident, again, to the extent that a circuit opinion can clearly establish law, Voss v. Goode dealt with an even more innocuous situation in terms of law enforcement. Under Texas law, as the Court knows, the peace officer is required to investigate an accident and fill out what Texas calls the Texas Crash Report. That report is not just for the benefit of the private citizens involved in the accident, but also for the Texas Department of Transportation and the National Highway Traffic Safety Administration that gather information from those reports. So, unlike in Voss, the officer was mandated to do something. In Voss, the incident was one of mental health care. I would like to think the officer felt a mandate to care for the 14-year-old girl, but legally was not required to do something, but did the right thing. And in Voss, just like in this case, just as Mr. Hall did, in Voss, the young lady's mother told her not to cooperate with the police, and she did not. And she was charged with a crime, 138-15, for making that statement. And this Court held probable cause existed for her being charged with that crime. So, again, the clearly established law, which any reasonable officer would have referenced at the time of Mr. Hall's offense, was, in now, again, while this Court might eventually take up en banc whether Voss v. Good decision is one that comports with Section 1983, the issue of immunity is resolved by the fact that Voss was the law in this circuit at the time of the incident which forms the basis of this lawsuit. So, as to probable cause alone, the appellant does not disprove the case. Again, as the District Court observed, admitted by Mr. Hall himself, established probable cause and, therefore, immunity even before we get to independent intermediary. Now, the independent intermediary clearly solidifies probable cause and immunity. And as Judge Jones was asking appellant's counsel, the law on independent intermediary has developed that it precludes a finding of causation between the officer and the arrest because it interposes a judicial intermediary. I appreciate counsel's acknowledgement because the record is very clear that this is not a Frank's case. Yes, Your Honor. What about the affirmative defense issue? Because, you know, as I see it, this is an affirmative defense. Just like self-defense is an affirmative defense to murder. And, you know, and I know it's in the statute, but there's a statute that says self-defense is, you know, a crime, too. I mean, not a crime. Self-defense is a defense to the crime. And so, I guess what I'm getting at is how can it be automatically no probable cause because there's an affirmative defense that still has to be proven? Does that mean that every murder that happens, if they're able to prove self-defense or a homicide that happens, if they're able to prove self-defense, that there's no probable cause because they proved affirmative defense? I'm just throwing that out there. This isn't a defense. It doesn't automatically . . . Anyway, go ahead. I want your thoughts on that. Well, I think your hypothetical demonstrates that, Your Honor, as a matter of fact, and so I'll start with that. As a matter of fact, Your Honor makes an excellent point in your hypothetical, which is a police officer arrives on a scene. One person's dead. Another person's killed, and the gun says, I shot him and killed him. He's established the elements of a crime of homicide. The officer says, why would you shoot him and kill him? And the gentleman says, I felt threatened by him, so I thought I was acting in self-defense. The officer says, well, that's not for me to decide here on the scene of the arrest. That's a, as Your Honor's question points out, a defense which you will have to develop and on which, and I think maybe this is implicit in your question, Judge, you, the shooter, the punitive criminal, have the burden to prove. And therein lies the problem because when the affirmative defense requires the defendant to bear the burden of proof, it cannot be a part of the elements of the crime because it's separate and apart from the crime. Or put another way, the crime is established without regard to whether there is or is not a potential affirmative defense, and the elements of the crime are what define probable cause. Now, that's the factual and logical answer, but respectfully, the panel doesn't even need to get there because under the question of qualified immunity, the question is, has the plaintiff, as to the second prong, identified clearly established law that would have told an officer that they must contemplate and perhaps even resolve the potential affirmative defense to the crime in calculating qualified, I'm sorry, calculating probable cause. And the answer to that as a matter of law in this circuit as of 2022 in Loftin v. Prentice is no, qualified immunity applies even if the officer thinks there may be an affirmative defense. Loftin says this circuit has never held an affirmative defense to vitiate probable cause. Now, as I said, this court may, I think under the internal operating rules, choose to revisit that question en banc and determine whether that's the law. I recall, I can't remember the name of the case, but in Loftin there's a footnote to a case that I handled for the city of Galveston where a gentleman was wielding a shotgun was held that the affirmative defense of home safety vitiated probable cause. This court rejected that district court holding in Loftin v. Prentice and pointed out that this court has never held that an affirmative defense vitiates probable cause. But if it helped Judge Doty to go to the next point, which is the independent intermediary, of course, as Judge Jones' question suggested, an officer who has a question about this, we treat independent intermediary as breaking the chain of causation. And that makes sense. It certainly does because someone else has decided the arrest and everyone here knows once a warrant is issued, it's not just an option to the officer to arrest them. Warrant is actually a commandment to all peace officers to arrest the person named in the warrant. And so from a breaking causation standpoint, it's an excellent analogy. But it also has a practical effect. In a question like this to answer your question, Judge Doty, an officer isn't sure. He doesn't know. She doesn't know. So they go to a judge and as this court pointed out, as the majority opinion said, and I know it was authored by Judge Jones for the majority, it would be unreasonable to say an officer's reliance on a neutral magistrate's application of the law is outside the boundaries of reasonableness for the purpose of qualified immunity. That is Villa Real at page 25 for the majority. So and let me just point out that as the panel discussed with Appellant's counsel, in Villa Real, the entire statute was unconstitutional. And as Judge Jones' question pointed out, it was ultimately determined to be unconstitutional. That is not even the case here in the case of 3815 for which Mr. Hall was charged. Mr. Hall is not alleging and no court has ever found 3815 to be unconstitutional. In fact, the Texas Court of Criminal Appeals, the Texas High Court for Criminal Matters in Barnes v. State in 2006, cited at page 22 of my brief, the Texas Court of Criminal Appeals held that the statute is constitutional and enforceable and held that speech, like what Mr. Hall is claiming, that excites another to engage in conduct that interferes with an investigation is conduct, not speech. I apologize, Judge. No, that's fine. Does it matter, I didn't want to interrupt your thought, but does it matter that he wasn't there, that Mr. Hall was away? I think there was some mention of, you know, in Voss that they were there and weren't there. Does it make any difference that he wasn't there, he was on the phone? Certainly not in the eyes of the law as the statute is written. It doesn't say one who is present at the scene who impedes or interferes. And as Judge Jones' question demonstrated, those situations, particularly in this day and age, can arise through all types of media that would create the same level of interference without regard to the manner of transmitting that interfering information. The issue here is, and again, I appreciate the fact that at least Mr. Hall was candid in his pleadings. Mr. Hall admits he is the reason his wife refused to comply with the officer's request for the information required for the accident report. And in that regard, I also want to just take a moment and speak to counsel's suggestion that Officer Trokoset didn't need this information. He could have gotten it elsewhere. He could have gone and gotten a warrant. Perhaps all that's true, but that's not the issue here. The question isn't whether he did the best law enforcement techniques as measured by the appellant's opinion. The question is whether Officer Trokoset had a legal right, and in this case obligation, to the information required to fill out the accident report, whether, as Mr. Hall acknowledges and the affidavit before the magistrate shows, Mrs. Hall was prepared to provide it to the officer until she phoned her husband to answer your question, Judge Doty, and her husband told her and told the officer that he had told Mrs. Hall, she is not going to provide you this information. Do you happen to know if the statute, if it's ever been successfully argued that it is in a defense to arrest? Because the specific language of the statute says it's a defense to prosecution. It doesn't speak to a defense to arrest. It doesn't just say a defense generally. It specifically says it's a defense to prosecution. Right. And I think, again, that makes the very point that Loftin v. Prentice put into law, which is an affirmative defense, and to your point, Judge, an affirmative defense to prosecution as opposed to arrest doesn't enter into the . . . it's not part of the calculus of probable cause. When I went through the police academy, they told us, because police officers need to thump things a little bit dumbed down, probable cause is there was a crime committed, this is the person who committed the crime, and you can articulate facts that explain those things. If not, that person might have an excuse for committing the crime or an affirmative defense to commit a crime, and your point is well taken, Judge, which I infer from your question, which is a defense to prosecution does not vitiate probable cause. And the suggestion that somehow the officer should have chosen not to approach a magistrate to seek their guidance and their decision based upon . . . again, I appreciate that this is not a Frank's case. Nobody's contending that there was anything other than a clear and, pardon the pun, Frank explication of the facts. In that circumstance, the suggestion that an officer should not do that creates its own potential problems, but again, runs afoul of this Court's recent majority opinion in Villa Real at page 25. Lastly, this is not a First Amendment retaliation case. Mr. Hall was not arrested because he spoke, but as this Court pointed out and held in Westfall v. Luna in 2018, which is cited at page 21 of my brief, and as the district judge quoted, when probable cause exists, any argument the arrestee's speech was the motivation for the arrest fails as a matter of law. So, that's the clearly established law as of 2018. That is, Mr. Hall might have said something that was otherwise an expression of free speech, but if there was probable cause for his arrest, it doesn't matter what motivated the officer. And that's because, under Graham v. Conner, the analysis of the arrest is an objective, not subjective question, so we don't look into whether Hall wanted to . . . I'm sorry, whether Trocassette wanted to arrest Hall because he didn't like what Hall said, or if he wanted to arrest Hall because Hall impeded his investigation. Of course, the Supreme Court may change that now. But the most important point I would posit for the moment is that was the clearly established law at the time. Lastly, I appreciate counsel's assertion that perhaps there are claims against the city. Obviously, there are no claims that exist against the city if there was probable cause for the arrest because there was no constitutional violation. But if the court were to find that there was no probable cause, but Trocassette is still entitled to qualified immunity, it would be kind of odd here, but obviously that's within the discretion of the panel's analysis. The court would, I imagine, recognize that, as did the district judge, that the plaintiff's allegations of the city are the same conclusory rote allegations that you see in every 1983 case. They come nowhere near setting forth facts necessary as to this court's opinion of Bennett versus Slidell on Bonk. Yes, sir. I'm going to ask you about that. There's no official policy stated for a Monell claim, and I realize it falls anyway if you are successful on the other part, but what about the argument that hadn't had a chance to have discovery because it's on a motion to dismiss? Well, yes and no. I mean, before filing suit, the city's policies are a matter of public record. So before filing suit, Mr. Hall certainly could have seen the police department's policies, but you'll recall, Your Honor, that the allegations are the city doesn't train officers to respect First Amendment rights in the context of the enforcement of this statute. And as Your Honor knows, this court has repeatedly taken judicial notice of the fact that individual municipalities do not train police officers in Texas. They are trained by the Texas Commission on Law Enforcement, which provides a statewide standardized training program. Thank you for your time. Okay. Thank you, sir. Mr. Johnson. May it please the Court, a few points on rebuttal. I'm going to start with addressing, Judge Jones, your question at the end of my presentation initially, which had to do with basically the Malley exception. And I have Malley v. Briggs 475 U.S. 335 printed out here, which is the basis for the exception. And here's how the Supreme Court, on page 346, describes what the issue is with the Malley exception. Quote, it goes without saying that where a magistrate acts mistakenly in issuing a warrant, but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable. But it is different if no officer of reasonable competence would have requested the warrant, i.e., his request is outside the range of the professional competence expected of an officer. If the magistrate issues the warrant in such a case, his action is not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty. The officer then cannot excuse his own default by pointing to the greater competence of the magistrate. So, that quote, no officer of reasonable competence would have requested the warrant. That's what we're talking about. That's exactly what we're talking about. And opposing counsel, you know . . . But you also have to show that the magistrate was incompetent then. It's my understanding and based on . . . That the magistrate's error was greater or whatever, right? It's not . . . You make your point. I'm just saying I appreciate that. In the Fifth Circuit, it's not a required showing that the magistrate's error was greater. It's just implied by the fact that the warrant was facially deficient. I don't know the Fifth Circuit. I don't know Fifth Circuit authority that has ever said that notwithstanding, other than a Frank's issue, that has said or denied qualified immunity for an officer who never should have requested a warrant. So, this court in Wilson v. Stroman had dealt a lot with different independent intermediary issues, including Malley claims. And it evaluated the content of the probable cause affidavits, the warrant affidavits, and said like, look, these don't make out claims and they shouldn't have been brought in the first place. These were foreign claims. I understand. And Wilson's a pretty unusual case and it's one among thousands, right? Right. So, yeah, Wilson is a pretty unusual case and this is a pretty unusual case. We, opposing counsel, talked a lot about the Lofton case and wanted to make some of my representations sound mistaken or misleading, but what's clear is that Voss, Westfall, Freeman, those are three Fifth Circuit cases. Carney v. State and Barnes v. State, those are Texas cases. All five of those cases, these are cases that have been thoroughly discussed and that Judge Dowdy quoted and he and I had a brief discussion about, those all said that mere argument with an officer, i.e. speech only, quote unquote, interference, is not an arrestable offense. If the interference is speech only, probable cause doesn't exist for interference. If your facts supported that proposition, you would be right, but your facts don't support it. Don't support which proposition? That it was speech only? It was speech that directly interfered because his wife chose to follow the husband's advice and therefore not cooperate. Prolonged the investigation. I don't see how you can do that otherwise. So, and that's naturally where, you know, I disagree with that interpretation and appellate. Well, what case has facts anywhere like that? And that's the point I was trying to make in my primary argument. This type of arrest doesn't happen because it seems so obvious that a phone call with a person would not lead to interference. And the other thing, too, is, and the point that I was making about how the officer had other access to this information, is that even if, you know, not even if, the fact that she didn't give it to him that night, she didn't outright refuse to give it to him. She just didn't want to give it to him right then and that context because she had reasonable reservations because she'd been stalked in the past and this other stuff. It wasn't an outright refusal. It was just wanting to do it in a different context. It wasn't preventing the officer from getting the information that he needed for the investigation. It was delaying it temporarily, which he had a right to do. Well, if he's on duty at night, things happen at night in parts of Houston, don't they? Some parts of Houston, but we're talking about a real estate developer and his wife. These people have never been convicted of a crime in their life. I'm not talking about danger to the officer. I'm talking about other duties that he had such that he needed to finish what, he's an official just the same as we are here in the court. He has a right to have people to be able to close out an inquiry and then make himself available for the public otherwise, right? Absolutely, and people can voluntarily provide information to help that, but they're not required by law to do so. They're only required by law unless there's a warrant to require them to do so. It's not a matter of no reasonable officer would have done what he did under the circumstances, is it? I disagree. I don't think any reasonable officer would have a phone conversation with somebody that by all accounts was fairly polite, respectful, straightforward, and say that that was interference just because he didn't get the information he wanted that night. How do you respond to the fact that the statute says defense to prosecution and not just defense generally? That's where all five of the cases, Voss, Freeman, Westfall, Carney, and Barnes all say, every single one of them says, that in these cases, in interference cases, when there is only speech as the interference, there is no probable cause. That's what those cases say. I know we're in overtime, and Judge Douglas, I didn't want to interrupt your thought, but if you have a . . . say at the scene, he'd come to the scene. They would call the police. He'd come to the scene. The officer would come to the scene and ask Ms. Hall, can I have your driver's license or your insurance information, what's your name, that kind of thing that you get under the statute? And she said, no, I'm not going to give it to you. Would you think that would be speech only? At the scene of the accident? At the scene of the accident. I mean, isn't it the same thing, not providing the information? I don't have an obvious answer to the question. I think that the statute requires the provision to the operator of the other vehicle. Okay. It doesn't require provision to law enforcement either at the scene or afterwards. So I don't think . . . I mean, unless you could call it a Terry stop, maybe. But even then, Terry stops only require the spoken provision of name and address. It doesn't require the provision of an identification card. But they didn't call . . . So I don't . . . I think that she could have refused in that situation. How are they going to investigate an accident that they not called for, and then somebody calls them later? How are they going to do it? There's a way to investigate everything else after the fact. Well, yeah. I mean, the fact that it's all after the fact and not at the scene, I think, is very telling because the statute requires provision of information to the operator of the other vehicle on the scene. Neither of those things were present here. Thank you, Your Honors. All right. Thank you very much. Next case of the morning.